IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

```
FILED
JUL - 5 2005
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia
```

MARY LOUISE JOHNSON,            )
    Petitioner,              )
                     )
v.                              )          CIVIL ACTION NO. 1:04-0080
                     )
VANESSA ADAMS                   )
    Respondent.              )

## PROPOSED FINDINGS AND RECOMMENDATION

On January 29, 2004, Petitioner, an inmate at FPC Alderson, Alderson, West Virginia, and acting *pro se*, filed her Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* By a Person in State or Federal Custody and Memorandum in Support.[1] (Document Nos. 2 and 3.) Petitioner alleges that the Federal Bureau of Prisons' [BOP] has incorrectly calculated her federal sentence. (Id.) By Standing Order also filed on January 29, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.)

## PROCEDURE AND FACTS

On August 23, 1988, Petitioner was arrested and charged in a six count Indictment returned in the United States District Court for the Western District of Tennessee, with conspiracy to distribute, possession, and sale within 1000 yards of a school district, a quantity of Dilaudid, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 845(a), and 846, and aiding and abetting, in violation of 18 U.S.C. § 2. United States v. Johnson, Case No. 1:88-cr-10032 (W.D.

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Tenn. May 4, 1989.) (Document Nos. 3, p. 3 and 10, p. 2.) The District Court released Petitioner on bond that same day. (Id.) Petitioner was again arrested by federal authorities on November, 23, 1989, for failure to appear, and released that day on bond. (Document No. 10, p. 2 and Exhibit B, ¶ 5(b).) On January 28, 1989, Petitioner was arrested by the authorities for the State of Tennessee for violation of probation and possession of cocaine, and was held in state custody until February 2, 1989, when she was released to the custody of the United States Marshal Service pursuant to a Writ of *Habeas Corpus Ad Prosequednum.* (Document Nos. 3, p. 4, and 10, p. 2, Exhibit B, ¶ 5(c).) On February 14, 1989, after a trial by jury, Petitioner was convicted in the Western District of Tennessee on all six counts of the federal Indictment. (Id.) Federal authorities returned Petitioner to the State of Tennessee on March 23, 1989, where she was sentenced on March 27, 1989, to a six year term of imprisonment for revocation of probation and possession of cocaine. (Document Nos. 3, p. 5, Exhibit 2 and 10, p. 2, Exhibit B, ¶ 5(c).) Petitioner was returned to federal authorities on March 27, 1989. (Id.) On April 27, 1989, she was sentenced in the District Court on Counts One, Four, Five, and Six, to a 222 month term of imprisonment for conspiracy and selling drugs within 1000 years of a school, and on Counts Two and Three, to a concurrent 15 year term of imprisonment for distribution of a controlled substance. (Document Nos. 2, p. 3 and 10, p. 1.) She was further sentenced to a six year term of supervised release.[2] (Id.) Petitioner was returned to the State of

---

[2] Petitioner appealed her conviction and sentence raising the following grounds for relief:

(1) the evidence was insufficient to support the jury verdict, (2) the district court improperly allowed witnesses to testify about her alleged co-conspirator's statements, (3) testimony (on cross-examination) by two prosecution witnesses that the defendant had shot her husband was grounds for a mistrial, (4) a defense witness's presence in the courtroom was not proper grounds for the exclusion of her testimony, (5) testimony as to the defendant's non-filing of federal income tax returns was improperly admitted, and (6) the district court did not properly consider relevant

Tennessee on April 27, 1989, where she pled guilty to a charge of insufficient funds on May 8, 1989, and sentenced to a 10 year term of imprisonment to run concurrent with the state sentence imposed on March 27, 1989, and to her federal sentence. (Document No. 3, p. 5.) Petitioner was transferred from the Madison County, Tennessee Jail, to the Tennessee Prison for Women, where she remained until April 25, 1990. (Document Nos. 3, p. 6 and 10, p. 3, Exhibit B, ¶¶ 5(h), (i).) On April 24, 1990, the State of Tennessee agreed to relinquish its primary jurisdiction over Petitioner to federal authorities and on April 25, 1990, she was taken into the custody of the United States Marshals Service to commence the service of her federal sentence. (Id.)

Petitioner subsequently filed two Motions under 28 U.S.C. § 2255 in the Western District of Tennessee, which Motions were denied by the District Court. United States v. Johnson, No. 91-1072 (W.D. Tenn. Oct. 30, 1991)[3] and United States v. Johnson, No. 94-1037 (W.D. Tenn. Feb. 10,

---

conduct in its application of the sentencing guidelines.

The Circuit Court of Appeals for the Sixth Circuit affirmed Petitioner's conviction and sentence entered in the United States District Court for the Western District of Tennessee. *United States v. Johnson*, 1990 WL 27155 (6th Cir.), *cert. denied*, 496 U.S. 929, 110 L.Ed.2d 648 (June 11, 1990).

[3] In her first § 2255 Motion, Petitioner raised the following grounds for *habeas* relief:

(1) the federal government did not have jurisdiction to try her in federal court; (2) her offense level was erroneously calculated; (3) the method of offense level calculation violated due process; (4) her federal indictment on counts 2 and 3 following earlier state charges based on the same act was barred by double jeopardy, collateral estoppel, and dual sovereignty; (5) she should have been sentenced according to state law, pursuant to the Assimilative Crimes Act; (6) she was shown her pre-sentence investigation report only one hour before sentencing; (7) the trial judge should have recused himself; (8) the prosecutor committed misconduct; (9) an assessment fee should not have been imposed for offenses committed before November 18, 1988; (10) defense counsel rendered ineffective assistance; (11) the trial judge erroneously allowed a government witness to remain in the courtroom throughout the trial; and (12) her mother should not have been charged, there was insufficient evidence to

3

1994). On August 6, 1998, Petitioner filed a Petition under 28 U.S.C. § 2241 in the Western District of Tennessee in which she alleged that "her sentence should be amended under Rule 35 of the Federal Rules of Criminal Procedure to reflect that the sentence is to be served concurrently with a state sentence, or that the Court should direct the BOP to award her the appropriate sentence credits." Johnson v. Scibana, No. 98-1211 (W.D. Tenn. Jan. 9, 2001)(No. 98-1211, Document No. 2, Court Order.)The District Court concluded that she was neither entitled to relief under Rule 35, nor credit against her federal sentence for time spent in state custody under 28 U.S.C. § 2241. (Id., p. 3.) The Court further concluded that Petitioner's claim under § 2241 was improperly filed in the Western District of Tennessee and advised her to file her § 2241 Petition in the district court in which she was confined. (Id., pp. 5-9.) Finding that she had not exhausted her administrative remedies or made a sufficient factual showing to warrant relief, the District Court refused to order a transfer of her Petition. (Id.)

On February 24, 1999, Petitioner further filed a Motion under 18 U.S.C. § 3582(c)(2), in which she requested a reduction in her sentence pursuant to an amendment to the Federal Sentencing Guidelines. Her Motion was denied by the District Court by Order entered on August 11, 1999. United States v. Johnson, No. 88-10032 (W.D. Tenn. Aug. 11, 1999). Finally, on January 18, 2005, Petitioner filed in the District Court for the Western District of Tennessee, her "Motion to Correct Illegal Sentence," pursuant to United States v. Booker, and United States v. Fanfan, __ U.S. __, 125 S. Ct. 738, 160 L.Ed.2d 621 (Jan. 12, 2005). Considering her claim under 28 U.S.C. § 2255, the

---

convict of conspiracy, and she should have been sentenced under pre-sentencing guidelines law.

Petitioner appeal of the District Court's Order denying her *habeas* relief was affirmed on appeal. *United States v. Johnson*, 1992 WL 78801 (6th Cir. (Tenn.) Apr. 16, 1992)

4

District Court dismissed Petitioner's Motion for failure to obtain permission from the Circuit Court to file a second or successive motion. United States v. Johnson, No. 88-10032 (W.D. Tenn. Jan. 20, 2005).

On January 29, 2004, Petitioner filed her instant Application under 28 U.S.C. § 2241, in which she challenges the BOP's calculation of the commencement date of her federal sentence and her receipt of prior custody credit. (Document Nos. 2 and 3.) Petitioner alleges that "[a] mistake was made in the way [her] sentence was executed." and contends that she is entitled to credit for time spent in custody beginning on March 27, 1989, the date on which she was sentenced on her state conviction and returned to federal authorities, and ending on April 24, 1990, when she was taken into custody by the U.S. Marshal Service. (Document No. 3, p. 9.) In support of her claim, Petitioner states that on February 14, 1989, after she was convicted of the federal charges, Tennessee Assistant District Attorney, Roger Moore, "told [District Court] Judge Todd in open court . . . that the Government could have total control over the [Petitioner] and if Madison County[, Tennessee] needed [her] for an appearance in Court, Madison County would get a writ to pick her up from the Federal Marshal's." (Id., pp. 4-5.) She further states that Judge Todd remanded her to the custody of the United States Marshal Service pending her sentencing hearing. (Id.) Nevertheless, Petitioner states that she was returned to the custody of Tennessee state authorities, where she remained until March 23, 1989, when she was returned to federal authorities for sentencing. ( Id.) After being returned to state authorities again, on April 27, 1989, Petitioner states that the State Circuit Court Judge "ordered the Plaintiff be placed back in the custody of the U.S. Marshal's to beg[i]n service of her sentence." (Id., pp. 5-6.) Contrary to the state court's order, Petitioner remained in state custody until April 25, 1990, when "it was determined that an error had been made in transferring

5

the Plaintiff to Tennessee Department of Corrections." (Id., p. 8.)

Petitioner attaches to her Memorandum in Support of her Petition, a copy of an e-mail from

Candace Whisman, Tennessee Department of Corrections to Henry Norris, Lexington FMC, dated

April 24, 1990, which states in relevant part as follows:

> After phone conversations with Roger Moore, Asst. D.A. Madison Co., TN, and John
> Callery, US Marshal, Memphis, it has been determined that an error was made in
> transferring this subject to TDOC. She should have been sent back to federal custody
> by Madison Co. following her sentencing there. In order to rectify this error, she
> needs to be transferred to the U.S. Marshal's Service for further transfer to the
> Federal Bureau of Prisons. Please accept this message as your authority to release her
> to the custody of the Nashville U.S. Marshal's Service to the detainers which are
> lodged on screen 9 of OBSCIS.

(Document No. 3, Exhibit 1A, p. 2.) Petitioner therefore contends, that the state relinquished

jurisdiction over her on February 14, 1989, because she had not been convicted of any charges

therein. (Document No. 3, p. 9.) Petitioner states:

> It is true a mistake was made on the way the [Petitioner's] term of imprisonment was
> executed. However, this mistake is too costly for the [Petitioner] and a grave
> miscarriage of justice has taken place unless credit is restored to the [Petitioner]. The
> [Petitioner] should not be required to serve her sentence of imprisonment in piece
> meal fashion. An additional 13 months of imprisonment is unjust especially since this
> grave error was committed through no fault of the [Petitioner].

(Id., p. 10.)

By Order entered on May 7, 2004, the undersigned directed Respondent to show cause, if

any, why Petitioner's Petition for Writ of Habeas Corpus should not be granted. (Document No. 7.)

On May 21, 2004, the Respondent, by counsel, filed a Response to the Order to Show Cause, urging

the Court to dismiss Petitioner's Application for failure to exhaust administrative remedies and state

a claim upon which relief can be granted. (Document No. 10.) Respondent attaches to her response

a copy of the Judgment in a Criminal Case entered in the Western District of Tennessee and the

6

Declaration of Diana Callison, the Inmate Systems Manager at FPC Alderson. (Id., Exhibits A and B.) Respondent argues that Petitioner's claims are not ripe for review because she failed to exhaust completely her administrative remedies pursuant to 28 C.F.R. §§ 542.10, et seq., by appealing the Regional Director's denial of her request to the Office of General Counsel. (Document no. 10, pp. 4-5.) Alternatively, Respondent contends that Petitioner's claims must be dismissed on their merits. (Id., pp. 5-12.) Respondent argues that pursuant to 18 U.S.C. § 3585(a), Petitioner's federal sentence was deemed to have commenced on April 25, 1990, when she was released by state authorities to the custody of the United States Marshal Service, awaiting transportation to the BOP facility in which she would serve her sentence. (Document No. 10, p. 5.) Respondent contends that the State obtained primary jurisdiction over Petitioner when she was arrested by state authorities on January 28, 1989. (Id., pp. 6-7.) Although the federal authorities had arrested Petitioner prior thereto and gained primary jurisdiction over her, such jurisdiction was relinquished when she was released on bond. (Id.) The state possessed continuous primary jurisdiction over Petitioner until Petitioner was released to the federal authorities on April 25, 1990, and the state thereby relinquished its primary jurisdiction over her. (Id., p. 7.)

Respondent further contends that a *nunc pro tunc* designation is not warranted. (Id., pp. 8-9.) Title 18, U.S.C. § 3584(a), requires that terms of imprisonment imposed at different times run consecutively, unless ordered concurrently by the Court. (Id., p. 9.) Petitioner's federal sentence was not ordered to run concurrent to her state sentence and therefore, this silence was interpreted by the BOP to require the sentences to run consecutively. (Id.) Respondent therefore, argues that "[a]s Petitioner's federal sentence was not ordered concurrent to the state sentence, a *nunc pro tunc* designation is inappropriate." (Id.)

7

Finally, Respondent argues that Petitioner is not entitled to any further credit against her federal sentence. (Document No. 10, pp. 9-11.) Pursuant to 18 U.S.C. § 3585(b), the BOP granted Petitioner prior custody credit for August 23, 1989, and November 23, 1989, when she was arrested by federal authorities and released on bond. (Id., p. 10.) The BOP further granted Petitioner Willis credit for the time period spent in state custody beginning March 16, 1989, and ending March 26, 1989. (Id.) Respondent maintains that Petitioner is not entitled to credit for the time served from March 27, 1989, through April 24, 1990, because "this was time spent actively serving her state sentence, and is not creditable under Willis." (Id., p. 11.)

Petitioner filed her Reply to the Respondent's Response on July 14, 2004. (Document No. 11.) Petitioner first states that she exhausted her administrative remedies while confined at FPC Bryan, Bryan, Texas, by filing a BP-9 at the institutional level, a BP-10 to the Regional Director, and a BP-11, to the Central Office. (Id., p. 2.) The Central Office however, neither acknowledged her grievance, nor submitted to her a response. (Id.) Petitioner states that she was advised by Mr. Greg Thompson, Executive Assistant, FPC Bryan, "that if no response was received within the 30 days allowed and no request for an extension of time was sent to the Petitioner from the Central Office, the Petitioner should consider the BP-11 denied." (Id.) She further states that on May 25, 2003, she attempted to pursue her administrative remedies again, but was advised that "this issue has already been addressed through administrative remedy while you were in custody at Bryan, Texas. Your comp remains the same." (Id.) Accordingly, Petitioner contends that her administrative remedies are deemed exhausted based upon the Central Office's failure to file a response. (Id., p. 3.)

With respect to the date on which her federal sentence commenced, Petitioner argues that the state relinquished primary jurisdiction over her on February 14, 1989, when the Assistant District

8

Attorney of Madison County, Tennessee, stated in "open court that the federal authorities could have total control over the Petitioner due to the fact that Petitioner had only been arrested and she was not facing any time in prison." (Document No. 11, p. 3.) She further argues that the United States Marshal Service therefore, in error, did not take custody of her until April 25, 1990. (Id., pp. 3-4.) "[T]he State of Tennessee would not have released the Petitioner to the Federal Marshal's if a mistake had not been made." (Id., p. 4.) Petitioner states that it was through no fault of her own that the United States Marshal Service failed to take custody of her and therefore requests, that she be awarded credit for the period of time beginning March 27, 1989, and ending on April 24, 1990. (Id.) On February 15, 2005, Petitioner filed her Motion for Emergency Hearing. (Document No. 12.) In the Motion, Petitioner states that if she is granted habeas relief, she "has less than 20 days left to serve on her 222 months sentence." (Id., p. 2.)

## ANALYSIS

### 1.    Exhaustion of Administrative Remedies

Federal prisoners challenging the execution of their sentence must exhaust administrative remedies prior to seeking *habeas* review under 28 U.S.C. § 2241. See Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Unlike the statutory exhaustion requirement applicable to cases filed under the Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a) (1996), and 28 U.S.C. § 2254, the exhaustion prerequisite for filing § 2241 cases is judicially imposed. As such, the exhaustion requirements remain within the Court's discretion and may be waived in certain circumstances. See McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992)(Holding that exhaustion was not required by the PLRA when the prisoner was seeking only monetary damages) *superseded by statute* 42 U.S.C. §

9

1997e(a)(1996)(Requiring exhaustion of administrative remedies by prisoners even when seeking only monetary damages). The majority of the Circuit Courts of Appeal have held that exhaustion under 28 U.S.C. § 2241 is not required when pursuing administrative remedies would be futile. See Winck v. England, 327 F.3d 1296, 1304 (11th Cir. 2003)(With respect to military *habeas* petitions, exhaustion is generally not required where "administrative appeal would be futile."); Holman v. Booker, 1998 WL 864018, *3 (10th Cir. Dec. 14, 1998)(The futility exception applies to § 2241 "only where there is a recent, adverse determination disposing of the precise point raised by the petitioner seeking to apply the exhaustion requirement."); Campbell v. Barron, 2004 WL 291180 (6th Cir. Feb. 12, 2004)(Recognizing a futility exception to § 2241 petitions); Fuller, 11 F.3d at 62 ("Exceptions to the exhaustion requirement are appropriate where the . . . attempt to exhaust such remedies would itself be a patently futile course of action."); Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003)(Exhaustion not required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.")(citations omitted).

Although the Fourth Circuit has not directly considered whether a futility exception applies in § 2241 *habeas* cases, the Court held in Rowe v. Petyon, 383 F.2d 709, 711 (4th Cir. 1967), aff'd, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), that a federal prisoner attacking the constitutionality of a future state sentence was not required to exhaust state remedies where the question to be decided was already presented by another prisoner and rejected upon procedural

grounds.[4] The holding in Rowe illustrates the Court's willingness to adopt a futility exception to the general exhaustion requirement. Cf. McClung v. Shearin , 2004 WL 225093 (4th Cir. Feb. 6, 2004)("Failure to exhaust may only be excused upon a showing of cause and prejudice.").

Under the BOP's Administrative Remedy Program, 28 C.F.R. §§ 542.10-19, a process "through which inmates may seek formal review of an issue which relates to any aspect of their confinement," federal prisoners are required first to informally attempt to resolve their grievances and if unsuccessful, file appeals to the Warden, then to the Regional Director, and finally, to the Office of General Counsel.[5] 28 C.F.R. § 542.10. Petitioner indicates that she submitted the

---

[4] The Court acknowledges that Rowe is a pre-AEDPA case and reiterates that the § 2241 exhaustion requirement is judicially imposed rather than statutorily required.

[5] The Administrative Remedy Program however, is not all-encompassing. Section 542.12 (b) provides as follows:

> Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation Claims, and Freedom of Information or Privacy Act requests. Staff shall inform the inmate in writing of the appropriate administrative procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

28 C.F.R. § 542.12(b). Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to

appropriate grievance forms to the Warden, Regional Director, and Office of General Counsel while she was confined at FPC Bryan, Bryan, Texas, but did not receive a response from the Office of General Counsel. The Affidavit of Diana Callison, Inmate Systems Manager, indicates that Petitioner failed to appeal the Regional Director's decision to the Office of General Counsel and therefore, did not completely exhaust the administrative review process. The undersigned notes that Petitioner attached to her Memorandum in support of her Petition, copies of her grievance forms submitted to the Warden and the Regional Director, but does not provide the Court with a copy of the appeal to the Office of General Counsel. Nevertheless, Petitioner attaches to her Response, a copy of an Inmate Request to Staff form dated May 25, 2003, in which she attempted to begin anew the administrative remedy process at FPC Alderson. The Staff Member's response, however, states that Petitioner's "issue has already been addressed through administrative remedy while you were in custody at Bryan, TX. Your comp remains the same." Accordingly, the undersigned finds that either Petitioner's administrative remedies must be deemed exhausted as the Office of General Counsel failed to file a timely response to her appeal, or that Petitioner's resort to further administrative remedies at FPC Alderson would have been futile. See e.g., Colton v. Ashcroft, 299 F.Supp.2d, 681, 690 (E.D. Ky. Jan. 15, 2004)("As there has been a prior indication that the Attorney General's Office has evidenced a strong position on the issue, together with an unwillingness to reconsider, resort to administrative remedies for this plaintiff is futile."); see also, Esposito v. Ashcroft, __ F.Supp.2d __, 2005 WL 119872 (N.D. W.Va. Jan. 14, 2005)(Excusing as futility petitioner's failure to exhaust his

---

General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id.*, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a). The entire process takes about 120 days to complete.

challenges to the BOP's calculation of GCT credits)(citing <u>Hendershot v. Scibana</u>, 2004 WL 2009241 (W.D. Wis. Sept. 3, 2004) and <u>Martinez v. Wendt</u>, 2003 WL 22456808 (N.D. Tex. Oct. 24, 2003)). The undersigned therefore, will consider below the merits of Petitioner's claims.

## 2.    BOP's Calculation of Petitioner's Sentence.

Essentially, Petitioner alleges that her federal sentence should have commenced on March 27, 1989, when she was sentenced in state court and returned to federal authorities after the state relinquished custody over her. Title 18, United States Code, Section 3585(a) provides that a federal sentence does not begin to run until the United States Attorney General receives the defendant into custody for service of the sentence.[6] See <u>Thomas v. Whalen</u>, 962 F.2d 358, 364 (4th Cir. 1992)(holding that 18 U.S.C. § 3568 (*repealed*), the predecessor to § 3585(a), "dictates that federal sentences commence on the date the prisoner is received at the penitentiary for the service of his sentence.") When a federal court imposes sentence upon a defendant already in state custody, as occurred in Petitioner's case, the principles of comity and primary jurisdiction dictate that the federal sentence does not commence until the state relinquishes its jurisdiction. See <u>United States v. Warren</u>, 610 F.2d 680, 684-85 (9th Cir. 1980). Under such circumstances, the state retains primary custody over the defendant until its jurisdiction ends in some fashion, e.g., expiration of the state sentence, bond or parole release, reversal of conviction, etc. See <u>United States v. Evans</u>, 159 F.3d 908, 912

---

[6] Section 3585(a) states:

**Commencement of sentence**. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

(4th Cir. 1998). "The concept of primary jurisdiction refers to 'the priority of service regarding a defendant's contemporaneous obligations to multiple sovereigns, whereby a defendant will fulfill his obligations to the sovereign with primary jurisdiction over him before any others.' " Trowell v. Beeler, 2005 WL 1181858, *2 n.2 (4th Cir. (N.C.) May 19, 2005)(quoting Savvas Diacosavvas, Note, Vertical Conflicts in Sentencing Practices: Custody, Credit, and Concurrency, 57 N.Y.U. Ann. Surv. Am. L. 207, 210 (2000).) Generally, the first arresting sovereign acquires primary jurisdiction "for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign." United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980).

Primary jurisdiction is not relinquished, however, when a defendant is borrowed pursuant to a writ of *habeas corpus ad prosequendum* . See Evans, 159 F.3d at 912.. This is because "the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities. . . . Principles of comity require that when the writ of habeas corpus *ad prosequendum* is satisfied, the receiving sovereign return the prisoner to the sending sovereign." Id. The time the defendant appears for prosecution of federal charges pursuant to an *ad prosequendum* writ is credited therefore, against the defendant's state sentence, not his federal sentence. Id.

Applying these principles to Petitioner's case, the undersigned finds that the State of Tennessee acquired primary jurisdiction over Petitioner on January 28, 1989, when state authorities first arrested her, and did not relinquish its jurisdiction over her until April 25, 1990, when she was released to the custody of the United States Marshal Service pursuant to an agreement entered into on April 24, between the state and federal authorities. Although Petitioner alleges that the state's primary jurisdiction was relinquished on February 14, 1989, when the state prosecuting attorney

14

verbally relinquished the state's jurisdiction in federal court, the evidence of record does not support such a finding; Petitioner neither provides the Court with an official document evidencing the state's relinquishment of jurisdiction, nor demonstrates that the United States Marshal Service was either asked by the state authorities to accept custody of Petitioner or that they refused to accept custody of her prior to April 24, 1990. Pursuant to 18 U.S.C. § 3585(a), Petitioner's federal sentence therefore, commenced on April 25, 1990.

Even though Petitioner's second state sentence was ordered to run concurrent to her first state sentence and her federal sentence, the fact remains that her federal sentence was imposed after her first state sentence. Title 18, U.S.C. § 3584(a) provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." The District Court for the Western District of Tennessee was silent as to whether Petitioner's federal sentence was to run concurrently or consecutively to her pre-existing state sentence and therefore, in accordance with § 3584(a), the sentence ran consecutive to the state sentence. See United States v. Saunders, 1998 WL 539482 (4th Cir. (N.C.) Aug. 25, 1998), cert. denied, 526 U.S. 1011, 119 S.Ct. 1157, 143 L.Ed.2d 222 (1999). Accordingly, Petitioner has neither demonstrated that the BOP improperly calculated the date on which her federal sentence commenced, nor that she was improperly denied a *nunc pro tunc* designation.[7]

---

[7] Title 18, U.S.C. § 3621(b) grants the BOP broad discretionary authority to determine the location in which a defendant will serve his term of imprisonment. Section 3621(b) provides:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, . . .. The Bureau may at any time . . . direct the transfer

15

Additionally, the undersigned finds that Petitioner is not entitled further credit against her federal sentence. Title 18, United States Code, Section 3585(a) provides that a federal sentence does not begin to run until the United States Attorney General receives the defendant into custody for service of the sentence. Section 3585(b) provides as follows:

**Credit for prior custody.** – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

It is well-established that the time in which a defendant is produced for prosecution in federal court pursuant to a writ of *habeas corpus ad prosequendum* from state custody does not count against a federal sentence. See United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). The state retains primary custody over the defendant until its jurisdiction ends in some fashion, e.g., expiration of the

---

of a prisoner from one penal or correctional facility to another. . . .

18 U.S.C. § 3621(b). "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." *Evans*, 159 F.3d at 911-12. A *nunc pro tunc* designation request must be considered by the BOP, but is not mandated. *See Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990).

The *Barden* Court explained a *nunc pro tunc* designation as follows:

The Latin phrase *nunc pro tunc* describes a doctrine that permits acts to be done after the time they should have been done with a retroactive effect - - a Latin term meaning literally, "now for then." An act *nunc pro tunc* is an "entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake." *Black's Law Dictionary* at 964 (5th ed. 1979).

*Barden*, 921 F.2d at 477-78, n.2.

state sentence, parole release, reversal of conviction, etc.  Id. The time the defendant appears for

prosecution of federal charges pursuant to an *ad prosequendum* writ is credited therefore, against the

defendant's state sentence, not his federal sentence. Id. This is because "the federal writ of habeas

corpus *ad prosequendum* merely loans the prisoner to federal authorities. . . . Principles of comity

require that when the writ of habeas corpus *ad prosequendum* is satisfied, the receiving sovereign

return the prisoner to the sending sovereign." Evans, 159 F.3d at 912.  Consequently, federal custody

commences only when the state relinquishes the defendant into federal custody on satisfaction or

extinguishment of his state sentence. See Evans, 159 F.3d at 912; Thomas v. Whalen, 962 F.2d. 358,

361 n.3 (4th Cir. 1992).

Petitioner's federal sentence began on April 25, 1990, when she was released to the custody

of the United States Marshal Service prior to the expiration of her first state sentence. Petitioner

received credit against her federal sentence for the dates on which she was arrested by federal

authorities and released on bond, specifically, August 23, 1988, and November 23, 1988. She further

received credit for the time period beginning January 28, 1989, the date of her state arrest, and

ending March 15, 1989, because this period of time was not credited against her state sentence.

Petitioner is not entitled to additional credit for this time period. See United States v. Wilson, 503

U.S. 329, 337, 112 S.Ct.1351, 1355-56, 117 F.3d 593 (1992)(Because a defendant serving a state

sentence is not in custody solely pursuant to federal charges, "Congress made clear [in 18 U.S.C. §

3585(b)] that a defendant could not receive a double credit."). Petitioner further received credit for

the period beginning March 16, 1989, and ending March 26, 1989, pursuant to Willis v. United

States, 438 F.2d 923 (5th Cir. 1971). Petitioner is not entitled to Willis credit for the time period

beginning March 27, 1989, and ending April 24, 1990, because during this time, she was actively

serving her state sentence. Petitioner is not entitled to further credit against her federal sentence. Accordingly, the undersigned finds that Petitioner is not entitled to *habeas* relief and therefore, her Petition should be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** with prejudice Petitioner's Petition (Document No. 2.), **DENY** Petitioner's Motion for Emergency Hearing (Document No. 12.) and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this

18

Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

ENTER: July 5, 2005.

R. Clarke VanDervort
United States Magistrate Judge